Arthur C. HOLDING, d/b/a Grand News,
Plaintiff,

v.

Charles NESBITT, Oliver Hodge and Buck
Cook, individually and as the Oklahoma
Literature Commission, Charles Nesbitt,
as Attorney General of the State of Ok-
lahoma, and Curtis Harris, individually,
and as an officer of the State of Okla-
homa, County Attorney of Oklahoma
County, Defendants.

Civ. No. 66–144.

United States District Court
W. D. Oklahoma.

Sept. 26, 1966.

Pierce, Mock, Duncan, Couch & Hen-
drickson, Oklahoma City, Okl., Samuel
W. Block, Thomas P. Sullivan, Chicago,
Ill., for plaintiff.

Charles Nesbitt, Atty. Gen. of Okla-
homa, James R. Fuson, Asst. Atty. Gen.,
for defendants.

D. Luster Cook and Robert N. Naifeh,
Assts. Atty. Gen. of Oklahoma, for de-
fendant, Charles Nesbitt.

Granville Scanland, and Curtis Harris,
Oklahoma City, Okl., for defendant, Cur-
tis Harris.

Before PICKETT, Senior Circuit
Judge, and DAUGHERTY and EU-
BANKS, District Judges.

EUBANKS, District Judge.

## MEMORANDUM OPINION

Plaintiff, a resident and citizen of Ok-
lahoma City and operator of a news stand

therein, brought this action for a judgment declaring the Oklahoma Statutes creating the Oklahoma Literature Commission (21 O.S. §§ 1040.1 to 1040.7) to be violative of the Constitution of the United States and for an injunction prohibiting defendants from acting under or enforcing those statutes. Principal defendants are Charles Nesbitt, Attorney General of the State of Oklahoma, Dr. Oliver Hodge, State Superintendent of Public Instruction, and Buck Cook, Commissioner of Charities and Corrections, who are ex officio members of the Oklahoma Literature Commission under the terms of the Act. The remaining defendant, Curtis Harris, is the County Attorney of Oklahoma County, Oklahoma.

A Three Judge Court was convened to hear said case pursuant to the provisions of Sections 2281 and 2284, Title 28, U.S.C.

It is alleged in the complaint and established by stipulations and documentary evidence that earlier this year commissioner defendants sent plaintiff a notice telling him that a hearing of the Oklahoma Literature Commission was to be held at the State Capitol Building, Oklahoma City, Oklahoma, on March 28, 1966, for the purpose of determining whether or not fifteen named books are deemed by the Commission to be obscene literature. Plaintiff had been selling or had sold fourteen of the fifteen books named in the notice. On the appointed date plaintiff appeared with counsel before the Commission and challenged the validity of the aforesaid statutes creating the Commission, but the Commission proceeded with its hearing and announced that fourteen of the fifteen books had been found to be obscene literature by the Commission and announced that it would issue an order prohibiting the sale or distribution of said fourteen books and that the Commission would recommend to Curtis Harris, County Attorney of Oklahoma County, that plaintiff and others be prosecuted for distribution and sale of obscene literature. Plaintiff also alleges that he is

threatened with prosecution for a violation of the Commission's proposed order prohibiting the sale of the aforementioned books. Plaintiff further alleged, and defendants concede that it was contemplated that the formal order of the Commission banning the sale of the fourteen books would be entered on the seventh day of April, 1966, however, this Court entered its temporary restraining order on the sixth day of April, 1966, enjoining the Commission from entering such order. After the temporary restraining order was issued the County Attorney, Curtis Harris, instituted fourteen separate criminal prosecutions against the plaintiff herein wherein it is alleged that Arthur C. Holding did wrongfully and knowingly commit the crime of selling, offering for sale, and exhibiting an obscene book, and each separate information mentions one of the fourteen books found to be obscene by the Commission. When these fourteen criminal prosecutions were instituted the plaintiff herein requested of this Court that the temporary restraining order be enlarged to enjoin the defendant, Curtis Harris, from continuing the prosecution in those cases. In said application for an order enlarging the temporary restraining order the plaintiff contended that we have here what is analogous to "The Fruit of the Poisoned Tree" situation where the very same books found to be offensive by the Commission are made the basis of the criminal charges and that it is circumstantially obvious that the filing of same was directly connected with the illegal Commission action, but the defendant, Curtis Harris, and other defendants herein allege that the fourteen criminal prosecutions were instituted by the County Attorney on his own initiative and that he acted independently of and in the absence of any recommendations made to him by the Oklahoma Literature Commission, and further, that the fourteen criminal cases were instituted under Sections 1040.8, 1040.9, and 1040.10, Title 21 of the Oklahoma Statutes and not under the Literature Commission procedures. In this connection it should be mentioned that

the last three mentioned sections of the Oklahoma Statutes were enacted in 1961 whereas Sections 1040.1 through 1040.7 were enacted in 1957. This Court, after having thoroughly examined the pleadings and briefs of all parties bearing on the question, entered its order on August 2, 1966, denying plaintiff's application for enlargement of said order for the reasons stated therein and for additional reasons as will be shown herein.

For a full understanding of the issues in this case the 1957 Act of the Oklahoma Legislature creating the Oklahoma Literature Commission is set forth in full, to-wit:

§ 1040.1   Definitions

For the purposes of this Act:

(a) "Literature" shall mean any book, pamphlet, paper, drawing, lithograph, engraving, photograph, or picture.

(b) "Obscene literature" shall mean any literature offensive to the chastity or modesty, expressing or presenting to the mind or view something that purity and decency forbids to be exposed, or so-called comic books which, in the opinion of the Commission, are not uplifting and beneficial to the education, welfare, and character building of the children of Oklahoma.

§ 1040.2   Oklahoma Literature Commission — Membership — Investigations — Reports

There is hereby created the Oklahoma Literature Commission, which shall consist of the Commissioner of Charities and Corrections, the Attorney General or a member of his staff designated by the Attorney General, and the State Superintendent of Public Instruction or a member of the State Department of Education designated by the State Superintendent of Public Instruction. The Commissioner of Charities and Corrections shall serve as Secretary of the Commission and shall keep all of the records and files thereof. The Commission shall make such investigations as may be necessary into sales of literature which it has reason to suspect is detrimental to the morals of the citizens of this State. The Commission shall submit an annual report of its activities to the Governor and to the State Legislative Council.

§ 1040.3   Hearings and [f]indings— Orders

The Commission shall hold hearings and make findings on literature it finds to be obscene through its investigations or from evidence furnished to it by any citizen of the State. The person, partnership, company, corporation, or other agency selling, distributing, or otherwise providing the citizens of this State with the alleged obscene literature may appear and give evidence at such hearing. The Commission shall make its findings upon all hearings and shall have the power to make an order prohibiting the sale or distribution of any literature it finds to be obscene by first informing the offending party or parties prior to prohibiting such distribution or recommending prosecution as hereinafter provided.

§ 1040.4   Prosecutions

The Commission shall recommend prosecution under the criminal laws of the State of any person, partnership, company, corporation, or other agency that it finds to be selling or otherwise distributing obscene literature. The Commission shall notify the County Attorney of the county in which such literature has been sold, or otherwise distributed, of its findings and recommendations, and shall provide the County Attorney with any evidence it might have obtained during its hearings and the proceedings in relation thereto. The County Attorney shall have the primary responsibility, and the Attorney General shall have the ultimate responsibility, for such prosecutions.

§ 1040.5   Literature [e]xempt

The provisions of this Act shall not apply to, and there is hereby exempted therefrom, all weekly and daily newspapers, all Federal and State matters,

and all reading matter used in recognized religious, scientific, or educational institutions.

§ 1040.6 Penalty

Any person, partnership, company, corporation, or other agency violating any order made by the Commission under the provisions of this Act shall be guilty of a misdemeanor.

§ 1040.7 Payment of [e]xpenses

All expenses necessary to be incurred by the Commission in carrying out the provisions of this Act shall be paid from appropriations made for the operation of the office of the Commissioner of Charities and Corrections.

The 1961 Act of the Oklahoma Legislature provides as follows:

§ 1040.8 Publication, distribution or participation in preparation of any obscene material or presentation—penalty

It shall be unlawful for any person to knowingly photograph, act in, pose for, model for, print, sell, offer for sale, give away, exhibit, publish, offer to publish, or otherwise distribute, make display, or exhibit, any obscene book, magazine, story, pamphlet, paper, writing, card, advertisement, circular, print, picture, photograph, motion picture film, image, cast, slide, figure, instrument, statue, drawing, presentation, or other article which is obscene, and any person who shall violate any provision of this act shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment in the county jail for a period of not more than one (1) year or by a fine of not more than One Thousand Dollars ($1,000.00) or by both such fine and imprisonment.

§ 1040.9 Obscene literature defined

"Obscene literature" shall mean any literature which, considered as a whole in the light of contemporary community standards, has as its predominant theme an appeal to prurient interest.

§ 1040.10 Provisions cumulative

The provisions of this act shall be cumulative to existing laws.

█ Addressing ourselves further to the proposition advanced and urged by plaintiff that the fourteen criminal prosecutions pending in the Common Pleas Court of Oklahoma County should be stopped, and partially reiterating our earlier order, we are of the opinion that the 1957 legislation and the 1961 legislation detailed above allow two separate and independent proceedings with only one involving the Oklahoma Literature Commission. The United States Courts are most reluctant to enjoin the enforcement of the criminal laws of the state. See Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324. The only case called to our attention wherein the United States Courts have restrained pending or threatened state court criminal prosecution is Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, but the facts in the Dombrowski case are in no way analogous to those presented in this proceeding and we have concluded that it is not precedent for enjoining the fourteen criminal prosecutions. However, we do wish to quote from the Dombrowski case some general principles which we think to be applicable to the elected officials in the State of Oklahoma and specifically those defendant herein to-wit:

"It is generally to be assumed that the state courts and prosecutors will observe constitutional limitations as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings."

"And in a variety of other contexts the Court has found no special circumstances to warrant cutting short the normal adjudication of constitutional defenses in the course of a criminal prosecution. In such cases it does not appear that the plaintiffs 'have been threatened with any injury other than that incidental to every criminal pro-

ceeding brought lawfully and in good faith or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford petitioners any protection which they could not secure by prompt trial and appeal pursued in this Court.' "

██ Further in connection with this matter, we have not seen the fourteen books involved in this case and are not called upon to determine the question of whether or not they are obscene. We find from the pleadings and admissions and stipulations that the defendant, Curtis Harris, instituted said fourteen criminal prosecutions independent of and in absence of any recommendation made to him by the Oklahoma Literature Commission but even if the Commission had recommended prosecutions in said cases the "Fruit of the Poisoned Tree" doctrine enunciated in Nardone v. U. S., 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, would not justify or allow us to enjoin said prosecutions. Here we have no indication that the books in question were obtained from plaintiff by the Commission through other than legal means. Plaintiff simply contends that Commission procedures are lacking in due process and contravene the First and Fourteenth Amendments. Since the findings of the Commission would not be binding upon the court or jury trying the fourteen criminal cases nor even admissible in evidence and since the criminal trials will be conducted with due regard to all of plaintiff's constitutional rights with the burden upon the State to prove beyond a reasonable doubt all essential allegations, including, among others, scienter and that the book(s) are indeed obscene, we again decline to halt the orderly determination of those charges. We believe and hold that any citizen of the United States may freely recommend to the proper official a prosecution of what the citizen believes to be an unlawful act. It then rests with the prosecutor to determine if charges should be filed. We believe and further hold that the Oklahoma Literature Commission would

be well within its right to recommend a prosecution to the proper county attorney of offenders of the obscenity laws of the State of Oklahoma even if they obtain their evidence at hearings prescribed by Section 1040.3 of the act. We go further and say that in our opinion the Commission would be derelict in its duty if it failed to report a violation of the obscenity statutes if it has knowledge of such violation. Any private citizen has the right to report the violation of the criminal laws to the appropriate prosecuting authority and may be morally obligated to do so although there is no legal requirement that such be done. (Wilson v. State, Okl.Cr., 306 P.2d 717) Certainly then plaintiff has no legal standing to denounce the Commission for "turning him in" if in fact the Commission had done so. And when the duly authorized prosecuting attorney files a criminal charge whether his attention is directed thereto by a board, commission, or private citizen, no court, State or Federal, should place any impediment in the path of orderly determination of the charge except for extenuating and compelling reasons as in Dombrowski. If plaintiff is not selling or has not sold obscene books, he has nothing to fear from the pending prosecutions. If he has violated the criminal laws of the Sovereign State of Oklahoma in that regard, he ought to be punished therefor.

██ The plaintiff herein has requested that we declare the Oklahoma Literature Act invalid in toto which we decline to do. However, we find no difficulty in declaring invalid the last sentence of Section 1040.3 which provides:

The Commission shall make its findings upon all hearings and shall have the power to make an order prohibiting the sale or distribution of any literature it finds to be obscene by first informing the offending party or parties prior to prohibiting such distribution or recommending prosecution as hereinafter provided.

And we further have no doubt whatever that Section 1040.6 is altogether invalid.

Accordingly, the defendants herein and those acting by, through, or under them are hereby restrained and enjoined from making any order prohibiting the sale or distribution of any literature and from instituting any criminal proceedings under Section 1040.6 for violation of any Commission orders. This ruling is no reflection on the integrity, good faith, or judgment of the individual commissioners, but is based squarely upon decisions of the United States Supreme Court in Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584; Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649; Marcus v. Search Warrants of Property, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127, and Reed Enterprises v. Corcoran, 122 U.S.App.D.C. 387, 354 F.2d 519. In the Bantam Books case cited above it was shown that the Rhode Island Legislature had created the Rhode Island Commission to encourage morality in youth whose duty it was to educate the public concerning obscene literature and to investigate and recommend the prosecution of all violations of the Rhode Island Obscenity Statutes. The Commission's practice was to notify distributors that certain named books and magazines had been declared objectionable by the Commission. No criminal prosecution was expressly threatened, but the Commission's notices stated that copies of the list of objectionable publications had been distributed to local police. The distributors usually removed the named books from circulation on receipt of the Commission's notice. Four publishers of paperback books filed suit for a judgment that the Commission's practices contravened the federal constitution. In the United States Supreme Court the Commission argued that it simply exhorts booksellers and advises them of their legal rights. In answer to this proposition the Court said:

" * * * This contention, premised on the Commission's want of power to apply formal legal sanctions, is untenable. It is true that appellants' books have not been seized or banned by the State, and that no one has been prosecuted for their possession or sale. But though the Commission is limited to informal sanctions— the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation—the record amply demonstrates that the Commission deliberately set about to achieve the suppression of publications deemed 'objectionable' and succeeded in its aim. We are not the first court to look through forms to the substance and recognize that informal censorship may sufficiently inhibit the circulation of publications to warrant injunctive relief.

\*     \*     \*     \*     \*     \*

" * * * People do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around, and Silverstein's [a distributor] reaction, according to uncontroverted testimony, was no exception to this general rule. The Commission's notices, phrased virtually as orders, reasonably understood to be such by the distributor, invariably followed up by police visitations, in fact stopped the circulation of the listed publications ex proprio vigore. It would be naive to credit the State's assertion that these blacklists are in the nature of mere legal advice, when they plainly serve as instruments of regulation independent of the laws against obscenity. * * * "

The Supreme Court held that the Rhode Island Commission's practices were unconstitutional and in doing so further said:

"Herein lies the vice of the system. The Commission's operation is a form of effective state regulation superimposed upon the State's criminal regulation of obscenity and making such regulation largely unnecessary. In thus obviating the need to employ criminal sanctions, the State has at the same time eliminated the safeguards of the criminal process. Criminal sanctions may be applied only af-

ter a determination of obscenity has been made in a criminal trial hedged about with the procedural safeguards of the criminal process. The Commission's practice is in striking contrast, in that it provides no safeguards whatever against the suppression of nonobscene, and therefore constitutionally protected, matter. It is a form of regulation that creates hazards to protected freedoms markedly greater than those that attend reliance upon the criminal law."

Therein, and quoting from Marcus v. Search Warrants of Property, 367 U.S. 717, 81 S.Ct. 1708, the Court further said:

"It follows that, under the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with obscenity without regard to the possible consequences for constitutionally protected speech."

And in "Bantam Books" the Court said further:

"What Rhode Island has done, in fact, has been to subject the distribution of publications to a system of prior administrative restraints, since the Commission is not a judicial body and its decisions to list particular publications as objectionable do not follow judicial determinations that such publications may lawfully be banned. Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."

It will be readily seen that the Oklahoma Literature Commission Act is even more objectionable than the act of the Rhode Island Legislature, especially in that the Oklahoma act authorizes the Commission to enter an order banning the sale of literature it finds to be objectionable and further permits the prosecution of one who violates the administrative ban all of which may occur before there is any judicial determination of obscenity. The defendants herein urge that the Administrative Procedures Act, 75 O.S. §§ 301–325 affords a judicial review of any order made by the

Oklahoma Literature Commission. With this we can agree, but we cannot concede that same will suffice to cure the constitutional infirmities in the Oklahoma Literature Commission Act for at least three reasons. First, there is no provision for judicial superintendence before orders are made and no requirement that the Commission seek a judicial review of its determinations of obscenity as required by 'Bantam Books', 'Freedman', and Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469. Secondly, we hold that the Administrative Procedures Act is inadequate to obviate the constitutional defects in the Literature Commission Act because same provides no limitation on the time within which a decision must be made by the reviewing judge on matters submitted to him as is required by Marcus v. Search Warrants of Property, supra, and Kingsley Books, supra. Thirdly, there would be no jury trial on the issue of obscenity in cases prosecuted under § 1040.6 as is required by the Oklahoma Constitution. We wholeheartedly agree with the defendants herein that the Oklahoma Literature Commission Act was passed for salutary purposes. However, we cannot under established law permit Sections 1040.1(b), 1040.6 and the last sentence in Section 1040.3 to stand. And in leaving in force those portions of the Oklahoma Literature Commission Act which are not herein declared unconstitutional, we must issue a word of warning. 'Bantam Books' clearly condemns notices or orders issued to claimed offenders by a state agency such as the Oklahoma Literature Commission, and also condemns censorship effectuated by extra legal sanctions. The Commission is free to investigate and recommend prosecution to the appropriate law enforcement agency, but it may not in its activities indulge in threats of prosecution against claimed offenders or employ other means of coercion, persuasion and intimidation. Their activities cannot, in effect, be a substitution for the State's criminal regulation of obscenity. This is the office and responsibility of the prosecutors.

Plaintiff complains of the vague and indefinite definition of "obscene literature" contained in Section 1040.1(b) of the Act. We agree that same is unconstitutional for lack of preciseness. (See Butler v. State of Michigan, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412). However, we further hold that the definition in Section 1040.9, under which the fourteen cases were filed, substantially conforms with the standard of constitutionally unprotected material as set forth in Roth v. United States, 354 U.S. 476, 77 S. Ct. 1304, 1 L.Ed.2d 1498; Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 969, 16 L.Ed.2d 31, and A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1.

Defendants have urged us to abstain from determination of constitutional questions herein. This matter was disposed of in our written order of June 9th overruling motions to dismiss. We neither add to nor subtract from that ruling here.

Counsel for the plaintiff will prepare a Judgment in conformity with the foregoing. Rule 58 Fed.Rules of Civ.Proc.