Mary HENLEY et al.

v.

George WISE et al.

Civ. No. 69 H 28.

United States District Court
N. D. Indiana,
Hammond Division.

June 4, 1969.

Saul I. Ruman, Hammond, Ind., Burton D. Wechsler, Gary, Ind., for plaintiffs.

Richard F. James, Hammond, Ind., Alfred R. Uzis, Lowell, Ind., for defendants.

Before KERNER, Circuit Judge, GRANT, Chief District Judge, and BEAMER, District Judge.

## OPINION

BEAMER, District Judge:

Plaintiff Mary Henley is the operator of the Village Boutique in Hammond, Indiana. Plaintiff Robert Adams is an employee in the same establishment. The remaining plaintiffs are adult members of the general public who patronize the business. The complaint alleges that the Village Boutique is divided into two parts, one of which contains a music box, soft drink machine and counter for the sale of inexpensive merchandise with space for chairs and tables, while the other portion is used for the sale of unusual items costing as much as $200.00. It specifically alleges that the business, including the sale of reading matter, is conducted in a lawful manner. The defendant George Wise is Chief of the Hammond Police Department. Richard Uzubell, appearing for defendants John Doe, is a member of the same police department and defendant Henry Kowalczyk is Prosecutor of Lake County, Indiana.

The complaint alleges that defendants, acting under color of state law, subjected plaintiffs to deprivations of various civil rights guaranteed by the Constitution of the United States, particularly the First and Fourteenth Amendments thereof. Of special importance here is the allegation that plaintiff Robert Adams was arrested for the sale of an "underground" newspaper (Exhibit A to the complaint) *Kaleidoscope, Chicago,* Volume 1, Number 1, and charged with violation of Burns' Indiana Statutes § 10–2803 (1968 pocket part) (Indiana Acts of 1961 Ch. 40 § 1) and that plaintiff Mary Henley has been threatened with prosecution under the same statute. Plaintiffs seek to have the statute declared unconstitutional on its face and as applied to the particular publication, and ask for an injunction against its enforcement on the ground that it is unconstitutionally "overbroad" and vague and is being applied in bad faith.

The single district judge, in whose Court the matter was filed, requested the empaneling of a three-judge District Court pursuant to Title 28 U.S.C. § 2281, and the Chief Judge for the Seventh Circuit appointed this panel. The Court has heard oral argument and examined the pleadings, briefs and exhibits, but has not heard evidence. It has concluded that the statute under attack is not unconstitutional on its face, except as to a minor facet, but the publication in question is not obscene and is, therefore, constitutionally protected free speech under -the First and Fourteenth Amendments to the United States Constitution. The Court has determined to issue a declaratory judgment to that effect, but to withhold injunctive relief until such time as the defendants herein demonstrate their bad faith in the application of the statute or other conduct. Accordingly, the Court will retain jurisdiction of the case to issue an injunction should such relief become necessary.

The action is brought under Title 42 U.S.C. § 1983 and jurisdiction is founded on Title 28 U.S.C. § 1343 providing for the original jurisdiction of district courts in actions to redress the deprivation of constitutional rights under color of state law. The plaintiffs specifically asked for an injunction against the enforcement of a state statute on the grounds that it is unconstitutional on its face and filed a request for a three-judge court. The statutory provisions, under Title 28 U.S.C. § 2834, for calling such a court were fully met, including service of notice upon the Attorney General and Governor of the State of Indiana, neither of whom appeared.

The defendants filed a motion to dismiss the case for failure to state a claim upon which relief could be granted and for lack of jurisdiction to grant the relief sought. The motion raised two questions. First, should the Court abstain from hearing the case or granting relief until such time as the state courts could construe and test the statute? Second, did the complaint itself reveal that the plaintiffs had an adequate remedy at law in the state criminal

proceedings and were, therefore, entitled to no equitable relief? While these questions are theoretically separate, they must be considered together against the background of the action.

## ABSTENTION

The argument behind both rests on the historical notion of comity between the state and federal sovereigns—that is, the federal courts should not interfere in state criminal proceedings and should allow the state courts an opportunity to construe the state statutes.

 While both parties have offered a learned dissertation on the history of the doctrine, its modern application must be considered in the light of the decision of the Supreme Court in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) in which the Court found a three-judge district court erred in dismissing a complaint for declaratory and injunctive relief against the enforcement of the Louisiana Subversive Activities and Communist Control Law and the Louisiana Communist Propaganda Control Law. The plaintiffs had been arrested and their property seized on warrants which were later quashed. The local authorities, however, continued their efforts to prosecute through the grand jury. With regard to the "abstention" argument, the Court said, at 380 U.S. 479, 489–492, 85 S.Ct. 1116, 1122–1124, 14 L.Ed.2d 22, 30–31 (1965):

> We hold that the abstention doctrine is inappropriate for cases such as the present one where, unlike Douglas v. City of Jeannette [319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324], statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities.
>
> \* \* \* \* \* \*
>
> (I)t is readily apparent that abstention serves no legitimate purpose where \* \* \* as here, the conduct charged in the indictments is not within the reach of an acceptable limiting construction readily to be anticipated

as the result of a single prosecution and is not the sort of 'hardcore' conduct that would obviously be prohibited under any construction.

The Court further found that the defense of a criminal prosecution was not an adequate remedy at law where continuous or threatened bad faith prosecutions under challenged statutes will have a "chilling effect" upon the exercise of First Amendment rights. It is apparent from the opinion of the Supreme Court that a district court in cases such as this must decide the merits of plaintiff's case before considering whether to abstain from further action. The Court must decide whether the statutes in question (1) abridge free expression by their overbreadth or vagueness and/or (2) whether the conduct in question is within the reach of a constitutionally permissible and readily anticipated construction of the statute. We conclude that the doctrine of federal abstention or deference to state courts on the interpretation and constitutionality of state statutes is inapplicable where, as here, there is an alleged impairment of the federal constitutional right to freedom of speech. Dombrowski v. Pfister, 380 U.S. 479, 485–486, 489–490, 85 S.Ct. 1116, 14 L.Ed.2d 22, 27–28, 30–31 (1965); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444, 452 (1967); Landry v. Daley, 280 F.Supp. 938, 946–949 (N.D.Ill.1967), prob. jurisdiction noted sub nom. Boyle v. Landry, 393 U.S. 974, 89 S.Ct. 442, 21 L.Ed.2d 436 (Dec. 9, 1968); and Landry v. Daley, 288 F.Supp. 200, 209–212 (N.D.Ill.1968).

This Court therefore found that it has the authority to hear plaintiffs' case and to determine the constitutionality of the statute on its face and as it applied to the particular publication. Since we have made such a finding we can determine what affirmative relief might be appropriate under the circumstances.

## CONSTITUTIONALITY OF THE STATUTE

The statute under attack is Burns' Indiana Statutes § 10–2803 (1968 pocket

part) (Indiana Acts of 1961, Ch. 40 § 1) which provides:

> Whoever knowingly sells or lends, or offers to sell or lend, or gives away, or offers to give away, or in any manner exhibits or has in his possession, with or without intent to sell, lend or give away, any obscene, lewd, indecent or lascivious book, pamphlet, paper, drawing, lithograph, engraving, picture, daguerreotype, photograph, stereoscopic picture, model, case, instrument, or article of indecent or immoral use, or instrument or article for procuring abortion, or for self-pollution, or medicine for procuring abortion, or advertise the same, or any of them, for sale, or writes or prints any letter, circular, handbill, card, book, pamphlet, advertisement or notice of any kind, or gives information orally, stating when, how, where, or by what means, or of whom any of the obscene, lewd, indecent or lascivious articles or things, hereinbefore mentioned can be purchased, · borrowed, presented or otherwise obtained, or are manufactured; or whoever knowingly manufactures, or draws and exposes, or draws with intent to sell or have sold, or prints any such articles or things, shall be fined not less that twenty dollars ($20.00) nor more than one thousand dollars ($1,000), to which may be added imprisonment for not less than twenty (20) days nor more than one (1) year; but nothing in this act shall be construed to affect teaching in regularly chartered medical colleges, or the publication of standard medical books, or the practice of regular practitioners of medicine or druggists in their legitimate business.

In argument, the plaintiffs have attacked two particular portions of this statute. In lines 5 and 6 they have attacked that portion of the statute which prohibits "possession * * * without intent to sell, lend or give away" any of the prohibited material, as being overbroad and an invasion of their rights to privacy under the First, Third, Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States by preventing them from personally possessing or reading the condemned material. They have argued that the literal application of the statute would proscribe such socially desirable activities as the study of prohibited materials by social scientists and doctors. They have also attacked the use of the word "immoral" in the phrase "article of indecent or immoral use", in line 10, as being an uncertain and unacceptable standard for alleged criminal conduct—especially when that conduct involves the exercise of First Amendment freedoms. In furtherance of this argument, they have pointed out that the word "article" is again used in the statute at line 23 where the word is used in connection with printing, drawing, or manufacturing of "any such articles or things". It is their contention that the latter use of the word "article" in connection with printing and drawing establishes the legislative intent to include First Amendment expression in the words "articles of indecent or immoral use".

We hold that the statute is unconstitutional insofar as it prohibits the knowing possession of obscene material "without intent to sell, lend or give away" such material. When Indiana acts against one who merely possesses obscene material without the intent to distribute it, the state has unconstitutionally intruded itself into two areas of protected activity.

The first protected area is the right of scholars to do research and advance the state of man's knowledge. This is the freedom of inquiry referred to in Griswold v. Connecticut, 381 U.S. 479, 482–483, 85 S.Ct. 1678, 1680, 14 L.Ed.2d 510 (1965):

> The association of people is not mentioned in the Constitution nor in the Bill of Rights. The right to educate a child in a school of the parents' choice—whether public or private or parochial—is also not mentioned. Nor is the right to study any particular subject or any foreign language.

Yet the First Amendment has been construed to include certain of those rights.

By Pierce v. Society of Sisters, supra [268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070], the right to educate one's children as one chooses is made applicable to the States by the force of the First and Fourteenth Amendments. By Meyer v. State of Nebraska, supra [262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042], the same dignity is given the right to study the German language in a private school. In other words, the State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge. The right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, *the right to read* (Martin v. City of Struthers, 319 U.S. 141, 143, 63 S. Ct. 862, 87 L.Ed. 1313) and *freedom of inquiry*, freedom of thought, and freedom to teach (see Wieman v. Updegraff, 344 U.S. 183, 195, 73 S.Ct. 215, 97 L.Ed. 218—indeed the freedom of the entire university community. Sweezy v. New Hampshire, 354 U.S. 234, 249–250, 261–263, 77 S.Ct. 1203, 1 L.Ed.2d 1311; Barenblatt v. United States, 360 U.S. 109, 112, 79 S.Ct. 1081, 3 L.Ed.2d 1115; Baggett v. Bullitt, 377 U.S. 360, 369, 84 S.Ct. 1316, 12 L.Ed.2d 377. Without those peripheral rights the specific rights would be less secure. And so we reaffirm the principle of the Pierce and the Meyer cases. [Emphasis added.]

The only exceptions made in the statute are for

* * * teaching in regularly chartered medical colleges, or the publication of standard medical books, or the practice of regular practitioners of medicine or druggists in their legitimate business.

Thus, the knowing possession of obscene matter without intent to distribute it is prohibited to professors and researchers in psychology, law, anthropology, art, sociology, history, literature and related areas. This prohibition is so sweeping as to put in violation of the law the famous Kinsey Institute at Indiana University. This chilling effect on the research, development and exchange of scholarly ideas is repugnant to the First Amendment.

Secondly, the statute prohibits possession by any individual and thereby violates the right to privacy found in Griswold, 381 U.S. at 485–486, 85 S.Ct. 1678. See also Cotner v. Henry, 394 F.2d 873 (7th Cir. 1968), cert. denied, 393 U.S. 847, 89 S.Ct. 132, 21 L.Ed.2d 118.

While only the right to *marital* privacy is covered by *Cotner* and *Griswold,* it is clear that this right stems from the greater right to individual privacy. Absent the use of self-destructive force, the state has no interest in prohibiting purely private individual conduct, i.e. conduct which does not involve another person. Even if an individual solely intends to use obscene and pornographic materials for the purposes of satisfying emotional needs, the state has no interest in his possession of it.

The above grounds were those relied on by this Court in announcing its judgment from the bench on March 3, 1969. Since the judgment was announced, the Supreme Court has added a further rationale based on the right to freedom of speech.

In Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (April 7, 1969), the Court held unconstitutional a Georgia prohibition which was very similar to that now before us. In invalidating the portion of that statute prohibiting the mere possession of pornographic and obscene materials, the Court held, 394 U.S. at 564, 89 S.Ct. at 1247:

It is now well established that the Constitution protects the right to receive information and ideas. 'This freedom [of speech and press] * *

necessarily protects the right to receive * * *.' Martin v. City of Struthers, 319 U.S. 141, 143, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); see Griswold v. Connecticut, 381 U.S. 479, 482, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Lamont v. Postmaster General, 381 U.S. 301, 307–308, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965) (Brennan, J., concurring); cf. Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L. Ed. 1070 (1925). This right to receive information and ideas, regardless of their social worth, see Winters v. New York, 333 U.S. 507, 510, 68 S.Ct. 665, 92 L.Ed. 840 (1948), is fundamental to our free society. Moreover, in the context of this case —a prosecution for mere possession of printed or filmed matter in the privacy of a person's own home— that right takes on an added dimension. For also fundamental is the right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy.

'The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone— the most comprehensive of rights and the right most valued by civilized man.' Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). See Griswold v. Connecticut, supra; cf. NAACP v. Alabama, 357 U.S. 449, 462, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

These are the rights that appellant is asserting in the case before us. He is asserting the right to read or observe what he pleases—the right to satisfy his intellectual and emotional needs in the privacy of his own home. He is asserting the right to be free from state inquiry into the contents of his library. Georgia contends that appellant does not have these rights, that there are certain types of materials that the individual may not read or even possess. Georgia justifies this assertion by arguing that the films in the present case are obscene. But we think that mere categorization of these films as 'obscene' is insufficient justification for such a drastic invasion of personal liberties guaranteed by the First and Fourteenth Amendments. Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home. If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.

* * * * *

We hold that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime. Roth [Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498] and the cases following that decision are not impaired by today's holding. As we have said, the States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home. * * *

Accordingly, the words "or without" in line 5 of the statute constitute an unconstitutional invasion of the individual rights and may not be enforced. Since Indiana has a very liberal severability clause permitting the severing of "any provision", these words may be

stricken by themselves without affecting the remaining text of the statute.[1]

■ The Court has examined the remaining contentions and finds that none of them invalidate the statute on its face. In response to the ruling of the Indiana Supreme Court in State v. Kuebel, 241 Ind. 268 172 N.E.2d 45 (1961) the Indiana Legislature made scienter a vital element of any prosecution under its obscenity law. See Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). The descriptive phrase "obscene, lewd, indecent or lascivious" is no less vague than similar language upheld by the Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Therein the Court found that the words "obscene, lewd, lascivious, or filthy" in Title 18 U.S.C. § 1461 and the words "obscene or indecent" in West's Cal. Penal Code Ann.1955, § 311, were not unconstitutionally vague when "applied according to the proper standard for judging obscenity, already discussed," and that they "gave adequate warning of the conduct proscribed". Roth v. United States, 354 U.S. 476, 491, 77 S.Ct. 1304, 1313, 1 L.Ed.2d 1498, 1511 (1957). See Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966).

The use of the word "immoral" in connection with First Amendment material would also be clearly unwarranted, unless limited by the Supreme Court's definition of obscenity. See Kingsley Intern. Pictures Corp. v. Regents of U. of N. Y., 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959); Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). Here, however, the placement of the word in context indicates that it refers not to First Amendment items, but to physical instruments unconnected with free speech, just as it did in Title 18 U.S.C. § 1461, upheld in Roth v. United States, *supra*.

■ While it is axiomatic that, where possible, a statute whose constitutionality is challenged will be read narrowly so as to preserve its constitutionality, First Amendment freedoms may not be chilled while awaiting such a limiting construction. Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (March 10, 1969) and Gregory v. City of Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (March 10, 1969). However, where the Supreme Court of the United States has offered an acceptable limiting interpretation in an area where the First Amendment's guarantees are of overriding importance, there is no need to await its adoption by a state court which has shown a willingness to follow the Supreme Court of the United States in these matters through application of *stare decisis*. Cuffel v. State, 215 N.E.2d 36 (Ind.1966). Accordingly, we hold that the statute is to be read as incorporating the Supreme Court's limiting definitions of obscenity.[2] As thus read, omitting the stricken portion relating to possession, we hold that the statute is constitutional on its face.

---

1. In "An Act concerning obscene literature and devices and prescribing penalties", Indiana Acts of 1961, Ch. 40, section 1 of which is under attack here, includes section 3 which provides:

 If any provision of this act or the application thereof to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable.

2. The limiting definitions are those enunciated in Roth, *supra*, at 479 of 354 U.S., 77 S.Ct. 1304; A Book Named "John Cleland's Memoirs of A Woman of Pleasure" v. Attorney General, 383 U.S. 413, 418–419, 86 S.Ct. 975, 16 L.Ed.2d 1 (1965); and Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967). See also Burstyn v. Wilson, *supra*. Cf. McGrath, The Obscenity Cases: Grapes of Roth, 1966 Sup.Ct.Rev. 7, 9–25.

## THE PUBLICATION IS NOT OBSCENE

█ The Court has further considered whether the act or any portion of it may be constitutionally applied to the publication in question. In doing so it has considered the numerous decisions of the Supreme Court in this area including their variegated majority, concurring and dissenting opinions. See e. g. A Book Named "John Cleland's Memoirs of A Woman of Pleasure" v. Attorney General, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); Ginzberg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); Kingsley Intern. Pictures Corp. v. Regents of U. of N. Y., 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed. 2d 1512 (1959); Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). See also Survey, XLI Notre Dame Lawyer 681, 753 (1966). The Supreme Court itself has summarized these opinions in its per curiam decision in Redrup v. New York, 386 U.S. 767, 770–771, 87 S.Ct. 1414, 1416, 18 L.Ed.2d 515, 518 (1967) when it said:

> Two members of the Court have consistently adhered to the view that a State is utterly without power to suppress, control, or punish the distribution of any writings or pictures upon the ground of their 'obscenity'. (Justices Black and Douglas). A third has held to the opinion that a State's power in this area is narrowly limited to a distinct and clearly identifiable class of material. (Justice Stewart). Others have subscribed to a not dissimilar standard, holding that a State may not constitutionally inhibit the distribution of literary material as obscene unless '(a) the dominant theme of the material taken as a whole appeals to prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description of sexual matters; and (c) the material is utterly without redeeming social value' emphasizing that the 'three elements must coalesce', and that no such material can 'be proscribed unless it is found to be *utterly* without redeeming social value.' A Book Named "John Cleland's Memoirs of A Woman of Pleasure" v. Attorney General of Commonwealth of Massachusetts, 383 U.S. 413, 418–419, 86 S.Ct. 975, 16 L.Ed.2d 1, 5, 6 (Chief Justice Warren, Justices Brennan and Fortas). Another Justice has not viewed the 'social value' element as an independent factor in the judgment of obscenity. Id. at 460, 86 S.Ct. at 998, 16 L.Ed.2d at 29, 30 (dissenting opinion) (Justice White). (parentheticals applied)

Applying these standards to the case before this Court, we must say, with the Supreme Court, that whatever standard is applied, the material in question is not obscene and is constitutionally protected free speech. It is, in fact, a social and political commentary punctuated with four-letter words of the most repugnant variety. While it may be utterly lacking in literary merit and be totally offensive to community standards with respect to acceptable social language, it neither appeals to the prurient interests nor is utterly without redeeming social value.

█ While the issue does contain a short scurrilous piece relating to making casts of male anatomy, simple examination of the issue shows that it is largely a collection of articles on politics and current social problems. The mere fact that one of these (the White Panther Party article) contains abundant profanity, does not diminish its purpose as the expression of a political view. Nor does it detract from the issue's nature to say that virtually all of the political views expressed in it are those of the radical activist left or even that some are avowedly Maoist or revolution-

ary and are unacceptable to the vast majority of Americans. Political speech may not be suppressed unless it falls within the "clear and present danger" and immediate incitement tests.

In Roth v. United States, 354 U.S. 476, 479, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), the Supreme Court held that printed matter may not be found obscene unless it is utterly without redeeming social importance. Political speech which is not deprived of its protection by virtue of its inciting nature is *per se* speech with redeeming social value. Therefore, this issue of *Kaleidescope* is not obscene.

■ The fact that it advocates socially unacceptable sexual conduct or the violation of the law without giving rise to an immediate threat of action is not an impairment of its constitutional protection, but an indication of its protected character. Kingsley Intern. Pictures Corp. v. Regents of U. of N. Y., 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959). The Court therefore finds that while the statute is not unconstitutional on its face, it cannot be constitutionally applied to the publication in question, and the Court herewith issues a declaratory judgment to that effect.

### RELIEF

■ The Court must further determine what relief should be granted based on a finding that plaintiffs' First Amendment rights are violated by the threatened application of the statute to this publication. An injunction against the enforcement of a statute will not issue absent a showing of irreparable harm. Dombrowski v. Pfister, 380 U.S. 479, 484–485, 490, 85 S.Ct. 1116, 14 L.Ed.2d 22, 27–28, 30 (1965). The facts in *Dombrowski* (id. at 487–489, 85 S.Ct. 1116, 14 L.Ed.2d 22, 28–30) showed a continuous and studied disregard by local officials for the petitioner's constitutional rights. A similar showing here would be a prerequisite to the issuance of an injunction. Cf.

Wells v. Hand, 238 F.Supp. 779, 786–787 (M.D.Ga.1965, three-judge Court), aff'd. sub nom. Wells v. Reynolds, 382 U.S. 39, 86 S.Ct. 160, 15 L.Ed.2d 32 (per curiam 1965) and Dawkins v. Green, 285 F. Supp. 772, 773–774 (N.D.Fla.1968).

■ The requisite showing may best be described as a lack of good faith on the part of the defendants. Such bad faith is characterized by both lack of probable cause for the pending or threatened prosecutions where the plaintiff's activities are clearly protected under the Constitution and by defendant's pattern of conduct indicating a conscious disregard for plaintiff's rights. Where the Court finds either that there is probable cause for the pending or threatened prosecutions under a statute not invalid on its face [Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Landry v. Daley, 288 F.Supp. 200 (N.D. Ill.1968)] or that defendant's conduct is unmarred by a conscious disregard for constitutional freedoms [Poulos v. Rucker, 288 F.Supp. 305 (M.D.Ala. 1968)], an injunction will be denied. Compare Cambist Films, Inc. v. Tribell, 293 F.Supp. 407 (E.D.Ky.1968), with Cambist Films, Inc. v. Illinois, 292 F. Supp. 185 (N.D.Ill.1968).

■ While this Court has found that there is no probable cause for the pending and threatened prosecutions of the plaintiffs because of the constitutionally protected nature of the publications in question, it has not found the defendants' conduct to be characterized by "bad faith" or a disregard for the rights of plaintiffs. On the contrary, the voluntary stay of state court proceedings and police activity while awaiting both a hearing on temporary injunction and then the Court's opinion, are cogent evidence of the defendants' lack of bad faith. Until shown to the contrary, the Court is willing to assume that defendants will abide by the decision in this case and no injunction will be issued. This assumption is not without condition. Should the defendants take action inconsistent

with the order and opinion of the Court, it will be strong evidence of bad faith bearing on the plaintiffs' right to both equitable relief and monetary damages. *Cf.* Bee See Books, Inc. v. Leary, 291 F.Supp. 622 (S.D.N.Y.1968).

■ The denial of plaintiffs' motion for an injunction does not prevent the Court from granting the declaratory relief sought by them. A declaratory judgment is not an advisory opinion, and where a controversy is present (as here, through the pending prosecution) a declaratory judgment may be rendered. Compare Poulos v. Rucker, 288 F.Supp. 305 (M.D.Ala.1968) and Universal Film Exchanges, Inc. v. City of Chicago, 288 F.Supp. 286 (N.D.Ill.1968), with Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (March 4, 1969) and Columbia Pictures Corp. v. City of Chicago, 288 F.Supp. 284 (N.D.Ill.1968).

■ Where in fact, basic constitutional questions are sought to be adjudicated, and the existence of the statute or the continued application thereof in a given circumstance will have a substantial chilling effect upon the plaintiffs' exercise of the freedoms of speech, press and assembly, the Court must consider a request for declaratory judgment even apart from injunctive relief. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Holding v. Nesbitt, 259 F.Supp. 694 (W.D.Okl. 1966, three-judge court), aff'd sub nom. Holding v. Blankenship, 387 U.S. 94, 95, 87 S.Ct. 1418, 1419, 18 L.Ed.2d 585, 586 (per curiam, 1967). This is so even if the remaining issue is the obscenity *vel non* of the publications involved when coupled with a course of conduct violating constitutional rights. Poulos v. Rucker, 288 F.Supp. 305 (M.D.Ala., 1968). The Court will, therefore, issue a declaratory judgment finding that the statute in question (Burns' Indiana Statutes § 10–2803, 1968 pocket part) is not unconstitutional on its face, but that the publication involved in this litigation is constitutionally protected free speech and not obscene.

At the time of the hearing on these matters, the Court expressed the hope that Indiana would consider properly drawn legislation for the protection of minors based on standards approved by the Supreme Court. See Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); Interstate Circuit, Inc. v. City of Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968). Acts of Indiana, 1969, chapter 207, page 772 is Indiana's newly adopted statute designed to meet this need. While it expresses no opinion on the statute adopted, the Court is happy to note that Indiana has properly directed its attention at a constitutional solution of a problem of such widespread concern.