**CHEROKEE NEWS & ARCADE, INC., et al., Appellants,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16120.**

Court of Criminal Appeals of Oklahoma.

Jan. 26, 1973.

Rehearing Denied March 20, 1973.

Woodson & Gasaway, Tulsa, for appellants.

G. T. Blankenship, Atty. Gen., W. Howard O'Bryan, Jr., Asst. Atty. Gen., for appellee.

BRETT, Judge:

Plaintiffs in Error, Cherokee News & Arcade, Inc., Joyce Stoffell, Rosalie Lonsdale, Walter Lonsdale, David A. Goldsmith, and Mike Fox, hereinafter referred to as defendants, were charged in the District Court of Comanche County with four-

teen criminal violations of selling obscene materials. The fourteen charges were consolidated for trial and tried before the court without a jury. Defendants were found guilty, and judgment and sentence was imposed on April 22, 1970, fixing punishment at a fine of $100.00 per defendant per case for a total of $2,800.00.

To gain a proper perspective we observe that this appeal does not involve pandering, Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); or assault upon individual privacy by publication in a manner as to make it impossible for the unwilling and unsuspecting to avoid exposure to it, Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1950); or distribution to juveniles, Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L. Ed. 645 (1943). Indeed, the record positively establishes there were no sales to juveniles. This case involves nothing more than the sale of alleged obscene materials to adults.

### I.

We first consider defendants' contention that the Oklahoma Obscenity Statute is unconstitutional:

(a) because of the absence of a statutory procedure for a judicial determination of obscenity prior to arrest and seizure of materials;

(b) because the elements of the offense are not set forth; and

(c) because the Oklahoma Statute encompasses adults and is not limited to distribution to juveniles, or unwilling and unsuspecting individuals, or under pandering circumstances. The trial court overruled defendants' objections on constitutional grounds without stating his reasons.

Nothing in the record identifies by title and section the exact statute under which the prosecutions were founded. It would appear the offenses charged were violations of 21 O.S.1971 § 1040.8 and/or 21 O. S.1971 § 1040.13. Section 1040.8, among other things, makes it "unlawful for any person to knowingly . . . sell . . . or otherwise distribute . . . any obscene book, magazine, . . . or other article which is obscene, filthy, indecent, lascivious, lewd or unfit, as defined in Title 21 of the Oklahoma Statutes § 1040.12. . . ." Section 1040.12, among other terms defined, provides "'obscene' means that to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."

The charge herein also states a violation of 21 O.S.1971 § 1040.13, which provides in relevant part that "Every person who, with knowledge of its contents, . . . sells . . . any obscene, lewd, lascivious, filthy or indecent article . . . is guilty of a misdemeanor . . . ." Both sections carry the same penalty and our consideration is limited to these provisions.

Defendants' challenge to the constitutionality of the obscenity statute because there is no procedure for an adversary hearing on obscenity prior to arrest is based on the rule that due process requires such a hearing before allegedly obscene materials can be seized for the purpose of preventing dissemination. In Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), the United States Supreme Court found a mass seizure of allegedly obscene publications under a Missouri procedure violated due process demands to assure non-obscene material constitutional protection because "there was no step in the procedure before seizure designed to focus searchingly on the question of obscenity." 367 U.S. at 732, 81 S.Ct. at 1716. In A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1732, 12 L.Ed.2d 809 (1964), the Supreme Court invalidated a state procedure where after an ex parte inquiry a judge ordered the seizure of a large quantity of allegedly obscene books. In "not first affording [defendants] an adversary hearing, the procedure leading to the seizure order was constitutionally deficient." 378 U.S. at 211, 84 S.Ct. at 1726. The conviction of a motion picture operator for exhibiting ob-

scene films was overruled by the Supreme Court in Lee Art Theatre v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), because the films were seized on a warrant issued without a prior hearing on their obscenity. "The procedure under which the warrant issued solely upon the conclusory assertions of the police officer without any inquiry by the justice of the peace into the factual basis for the officer's conclusions was not a procedure 'designed to focus searchingly on the question of obscenity' . . . ." 392 U.S. at 637, 88 S.Ct. at 2104. Accordingly, the courts have held that due process requires a judicial adversary hearing on the question of obscenity before allegedly obscene materials can be seized.[1]

We also note that a former Oklahoma Statutory Procedure, 21 O.S. § 1040.1 through § 1040.10, to review publications for obscenity was held unconstitutional as it authorized the banning of literature found objectionable and permitted "the prosecution of one who violates the administrative ban all of which may occur *before* there is any judicial determination of obscenity." Holding v. Nesbitt, 259 F.Supp. 694, 700 (W.D.Okl.1966). Affirmed by the United States Supreme Court in Blankenship v. Holding, 387 U.S. 95, 87 S.Ct. 1419, 18 L.Ed.2d 586 (1967).

However, the case at bar does not involve the mass seizure or prior censorship of alleged obscene materials. The publications admitted into evidence were purchased individually on different dates by different people from the defendants. None of the exhibits were seized incident to arrest or pursuant to a warrant. There is a significant distinction between seizure and merely obtaining a copy as evidence of a criminal offense. In Peachtree News v. Slaton, 226 Ga. 471, 175 S.E.2d 539 (1970) and Gornto v. State, 227 Ga. 46, 178 S.E.2d 894, 896 (1970), it was held there "is no

necessity for an adversary hearing on the question of obscenity of publications prior to the institution of a criminal action against the distributor, where the publications have been obtained by the prosecuting officers by purchase and no seizure of the publications is required for evidence." Other courts have also held that a prior adversary hearing on obscenity is not necessary where only a single copy is obtained as evidence to be used in a criminal prosecution. State v. Hartstein, 469 S.W.2d 329 (Mo.1971). Bazzell v. Gibbens, 306 F. Supp. 1057 (E.D.La.1969). State v. Vollmar, 389 S.W.2d 20 (Mo.1965).

It should be noted that aside from the statutes considered here prohibiting sale of obscene matters, §§ 1040.8 and 1040.13, the Oklahoma Statutes provide a procedure for a judicial adversary hearing prior to seizure of alleged obscene mailable matter. 21 O.S.1971 §§ 1040.14 to 1040.25.

Defendants next challenge the constitutionality of the obscenity statute for its failure to set forth the elements of the offense; that is, the absence of the elements necessary to determine obscenity. Defendants argue the failure to include the "utterly without redeeming social value" test, Memoirs v. Massachusetts, 383 U.S. 413, 418–419, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), and failure to specify that the "Contemporary community standard" to be applied is a national, not a local standard, Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L. Ed.2d 793 (1964), renders our statutes unconstitutional on their face.

In Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957), the United States Supreme Court held that "obscenity is not within the area of constitutionally protected speech or press." Thus the states have been free to regulate obscenity excluding certain areas such as private possession. As the Supreme Court stated in Stanley v. Georgia,

---

1. Evergreen Review v. Cahn, 230 F.Supp. 498 (E.D.N.Y.1964). Delta Book Distributors v. Cronvich, 304 F.Supp. 662 (E.D.La.1969). Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968). Poulos v.

    Rucker, 288 F.Supp. 305 (M.D.Ala.1968). Cambist Films v. Tribell, 293 F.Supp. 407, 409 (E.D.Ky.1968). Tyrone v. Wilkinson, 410 F.2d 639 (4th Cir. 1969).

394 U.S. 557, 568, 89 S.Ct. 1243, 1250, 22 L.Ed.2d 542 (1969), while the "states retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home." But in those cases, such as this instance, not involving mere private possession, the relevant question is whether the material is obscene and thus subject to regulation.

In *Roth* the court noted that the "portrayel of sex, e. g., in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press," and adopted this test of obscenity: "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." 354 U.S. at 489, 77 S.Ct. at 1311. The courts have adhered to this guide which was restated in Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967):

> ". . . a State may not constitutionally inhibit the distribution of literary material as obscene unless '(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value,' emphasizing that the 'three elements must coalesce,' and that no such material can 'be proscribed unless it is found to be utterly without redeeming social value.' " 386 U.S. 770–771, 87 S.Ct. 1416.

This Court had previously applied such a test noting the elements of prurient appeal, contemporary community standards and social value. Ramirez v. State, Okl.Cr., 430

P.2d 826, 829 (1967). Other courts have generally applied this three-element test.[2]

■ As noted the Oklahoma Statutes considered here define "obscene" using almost the identical language of the Roth decision. 21 O.S.1971 § 1040.12 and § 1040.9. It is true that the statutes do not mention the "social value" element or specify that the contemporary community standard is a "national" standard. However, the mere absence of such further detailment of the obscenity test in the statute does not render it unconstitutional since the crucial factor is whether the appropriate standard is employed in deciding a particular case.

In *Roth* the Supreme Court upheld the constitutionality of a federal and California obscenity statute, although neither statute defined obscenity or included a test to determine obscenity. In *Roth* it was found that the trial courts had instructed the jury as to the proper constitutional standard by which to judge obscenity. 354 U.S. at 489–490, 77 S.Ct. 1304. In Hayes v. Commonwealth, 470 S.W.2d 601 (Ky.1971), a Kentucky obscenity statute was upheld despite a challenge because it did not contain the element of "redeeming social value." In Smith v. Commonwealth, 465 S.W.2d 918 (Ky.1971), again upholding the obscenity statute omitting the social value element, the court noted the rationale of several other decisions that "even though the constitutional standards defining obscenity are not literally incorporated into the obscenity statute, those standards are to be implied whenever the statute is applied." 465 S.W.2d at 920. See Cambist Films v. Tribell, 203 F.Supp. 407 (E.D.Ky.1968); Grove Press v. Kansas, 304 F.Supp. 383 (D.C.Kan.1969); State v. A Quantity of Books, 197 Kan. 306, 416 P.2d 703 (1966); Delta Book Distributors v. Cronvich, 304 F.Supp. 662 (E.D.La.1969). Contra see

---

2. Gregory v. Gaffney, 322 F.Supp. 238, at 240 (W.D.N.C., 1971). Shinall v. Worrell, 319 F.Supp. 485, at 490 (E.D.N.C., 1970). State v. McCluney, 11 N.C.App. 11, 180 S.E.2d 419, at 420 (1971). State v. Adult Book Store, 26 Ohio App.2d 183, 271 N.E.2d 13, at 15, 19 (1971). United

States v. Klaw, 350 F.2d 155, at 164 (2d Cir. 1965). Kansas v. A Quantity of Books, 197 Kan. 306, 416 P.2d 703, at 707 (1966). City of Chicago v. Universal, 34 Ill.2d 250, 215 N.E.2d 251, at 253 (1966). Dillingham v. State, 9 Md.App. 669, 267 A.2d 777, at 779 (1970).

Stein v. Batchelor, 300 F.Supp. 602 (N.D. Tex.1969).

We therefore hold that the Oklahoma Obscenity Statute here considered is constitutional even though the constitutional standards defining obscenity as requiring the element of redeeming social value and requiring a "national" contemporary community standard are not literally incorporated into the statutes, since the full constitutional standard is to be implied whenever the statutes are applied.

■ Defendants further attack the constitutionality of our statute because it does not reflect a limited concern for juveniles, it is not limited to assault on privacy by publication so as to make it impossible for an unwilling individual to avoid exposure, it is not limited to pandering, and it is not limited to hard-core pornography. This argument stems from the view that the state may regulate obscenity only in these narrowly defined classifications. Such a view is apparently derived in part from comments by the court in Redrup v. New York, supra, dispensing with the issues not involved. 386 U.S. at 769, 87 S.Ct. 1414. As we read *Redrup* the court was merely citing prior decisions concerning the specific obscenity classifications of concern for juveniles, assault upon privacy of unwilling individuals, and pandering; none of which were determinative of the court's decision. Other courts, when presented with similar arguments, have rejected the idea that *Redrup* requires the presence of one of these three circumstances to sustain an obscenity conviction. Huffman v. United States, 259 A.2d 342, 344 (D.C.App. 1969). United States v. 77 Cartons of Magazines, 300 F.Supp. 851, 853–854 (N. D.Cal.1969). The hard-core pornography idea, expounded by Justice Stewart, has not been embraced by a majority of the Supreme Court. See Ginzburg v. United States, 838 U.S. 463, at 499, 86 S.Ct. 942, 16 L.Ed.2d 31 (dissent); Jacobellis v. Ohio, 378 U.S. at 197, 84 S.Ct. 1676 (Concurring); A Quantity of Books v. Kansas,

378 U.S. at 214, 84 S.Ct. 1723 (Concurring).

We therefore find defendants' challenges to the constitutionality of the obscenity statute, 21 O.S.1971 § 1040.8 and § 1040.13, to be without merit.

## II.

Having determined that the Oklahoma Obscenity Statute is constitutional, we address our attention to the sufficiency of the evidence supporting the conviction. Defendants contend that the evidence does not prove the vital element of scienter, in that the state failed to prove any knowledge by the defendants of the contents of the materials being sold.

The controlling case on scienter in obscenity prosecutions in Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), which reversed a bookstore proprietor's conviction of possessing an obscene book in a place where books are sold, in violation of a city ordinance. Under the ordinance there was no requirement of proof of scienter. The Court stated:

"The ordinance here in question, to be sure, only imposes criminal sanctions on a bookseller if in fact there is to be found in his shop an obscene book. But our holding in Roth does not recognize any state power to restrict the dissemination of books which are not obscene; and we think this ordinance's strict liability feature would tend seriously to have that effect, by penalizing booksellers, even though they had not the slightest notice of the character of the books they sold."

The Court further stated:

"It is argued that unless the scienter requirement is dispensed with, regulation of the distribution of obscene material will be ineffective, as booksellers will falsely disclaim knowledge of their books' contents or falsely deny reason to suspect their obscenity. We might observe that it has been some time now since the law viewed itself as impotent

to explore the actual state of a man's mind. See Pound, The Role of the Will in Law, 68 Harv.L.Rev. 1. Cf. American Communications Ass'n, C. I. O., v. Douds, 339 U.S. 382, 411, 70 S.Ct. 674, 94 L.Ed. 925, 950. Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. *The circumstances may warrant the inference that he was aware of what a book contained, despite his denial.*" [Emphasis added]

■ In the instant case, we are of the opinion that the circumstances warrants the inference that the defendants were aware of what the magazines contained. The evidence on behalf of the state adduced that the entrance to the store was marked "Adults Only." The evidence further adduced that the store did not contain any regularly recognized magazines, but rather, contained magazines of the type introduced into evidence. From an examination of the state's exhibits, it is readily apparent that anyone other than a blind person would be aware of the contents contained therein by a cursory examination of the covers. We finally observe that the defendants did not testify and deny their knowledge of the contents of the magazines.

■ In conclusion, we observe that although the trial court found that the deck of cards and the thirteen magazines were obscene that, based upon the holdings of the United States Supreme Court in Bloss v. Dykema, 398 U.S. 278, 90 S.Ct. 1727, 26 L.Ed.2d 230, that the deck of cards and twelve of the magazines are not "obscene." The Court of Criminal Appeals of Texas construed the holding in Bloss v. Dykema, *supra,* in the case of Hunt v. State, Tex.

Cr.App., 475 S.W.2d 935, wherein they stated:

"The court has examined the magazines on which the instant prosecutions were based: The McCoy No. 1; Casbah No. 2, PVT Penthouse, Vol. 1, Issue 2. They are all quite similar in content. They are high-gloss, (both color and black and white) apparently unretouched pictures of young females naked as to their genital area. In most of the photographs the subject's legs are spread wide, and the focus is on the genital area with emphasis often added by garter belts and contorted positions. With the minor exception of two pictures, the women in the pictures are alone, and there is no overt portrayal of sexual activity. This is exactly the kind of a picture which the Supreme Court holds is not obscene. Bloss v. Dykema, 398 U.S. 278, 90 S.Ct. 1727, 26 L.Ed.2d 230 (1970), rev'g per curiam 17 Mich.App. 318, 169 N.W.2d 367 (1969); Central Magazines Sales, Ltd. v. United States, 389 U.S. 50, 88 S.Ct. 235, 19 L.Ed.2d 49 (1967), rev'g per curiam, United States v. 392 Copies of Magazine entitled 'Exclusive', 373 F.2d 633 (4th Cir. 1967)."

We are of the opinion that the magazine "My-O-My" which depicts overt portrayal of sexual activities between two males is obscene.

It is therefore the Order of the Court that cases No. CRM–69–944, CRM–69–945, CRM–69–946, CRM–69–952, CRM–69–979, CRM-69–980, CRM–69–990, CRM–69–991, CRM–69–992, CRM–69–1022, CRM–69–1023, CRM–69–1135, CRM–69–1170 are Reversed and remanded with instructions to dismiss. Case No. CRM–69–947 is affirmed.

BLISS, P. J., and BUSSEY, J., concur.