**UNITED ARTISTS CORPORATION,**
Plaintiff,

v.

**Curtis P. HARRIS, Individually and as District Attorney for Oklahoma County, Oklahoma, Defendant.**

**Civ. A. No. CIV–73–498–D.**

United States District Court,
W. D. Oklahoma.

Aug. 23, 1973.

858

Edward E. Soule, James C. Chandler, and Peter T. Van Dyke, Oklahoma City, Okl., and William M. Pinzler, New York City (Louis Nizer, Gerald F. Phillips and Phillips, Nizer, Benjamin, Krim & Ballon, New York City, and Lytle, Soule & Emery, Oklahoma City, Okl., on the brief), for plaintiff.

Curtis P. Harris, Dist. Atty., for Oklahoma County, for defendant.

Fred H. Anderson, Asst. Atty. Gen. for The Honorable David Hall, Governor of the State of Oklahoma, and Larry Derryberry, Atty. Gen., of the State of Oklahoma.

Before HOLLOWAY, Circuit Judge, DAUGHERTY, Chief Judge and EUBANKS, District Judge.

## MEMORANDUM OPINION AND JUDGMENT

HOLLOWAY, Circuit Judge.

This is an action for injunctive and declaratory relief against seizure of the film "Last Tango in Paris" (Tango) and prosecution under the Oklahoma obscenity statutes for its exhibition.[1] The plaintiff United Artists Corporation (United), as distributor of the film, claims that the statutes violate the First and Fourteenth Amendments to the Federal Constitution. Among other things United specifically says that the statutes fail to comply with requirements for valid obscenity laws, recently spelled out in Miller v. California, 413 U.S. 15, 93 S. Ct. 2607, 37 L.Ed.2d 419. The defendant Harris, or someone acting at his instance, is alleged to have communicated to the film's exhibitor that he was preparing a warrant to seize the film and intended to initiate criminal proceedings against the exhibtor, resulting in the showing being halted. Claiming violation of paramount rights under the First Amendment and irreparable injury by the threatened enforcement of the allegedly invalid statutes, United asks declaratory and injunctive relief.

The presiding District Judge denied an application for a temporary restraining order on July 27, 1973, advising the parties that an early hearing before a three-judge panel would be held. A three-judge court was constituted on July 30, 1973, and a consolidated hearing on the application for a preliminary injunction and on the merits was held August 6, 1973.

The essential facts are not in dispute.[2] On May 9, 1973, Oklahoma Cinema The-

---

1. Relief is sought against 21 O.S.A. 1971, §§ 1021, 1040.8, 1040.9, 1040.10, 1040.12, 1040.-13, 1040.51, and 1040.52.

2. The facts as stated are admitted in the pleadings or are established by the uncontradicted affidavits of Messrs. Shanbour, Scott, and Mound, admitted without objection at the consolidated hearing on August 6.

atres, Inc. (Cinema) entered into an agreement with United for the exhibition of Tango in Oklahoma City. Its showing commenced on July 18, 1973, at 1:00 p. m. and continued until the end of the second show at 5:45 p. m. that day.

Before the exhibition, defendant Harris had stated through the news media that representatives of his staff and the Oklahoma City Police Department would view the film and if it were their opinion that it was obscene, criminal charges would be filed. At about 4:00 p. m. on July 18, Cinema's attorney was told by the Police Department that a search warrant for seizure of the film and a criminal complaint against Cinema's general manager were being prepared.

The attorney recommended withdrawal of the film in view of the circumstances and the threat of prosecution. The Police Department was advised by the attorney that the film would be closed on completion of the showing at 5:45 p. m. On brief, the defendant essentially agrees that although no prosecutorial action was taken, the mere threat of such action caused the exhibitor to remove Tango from exhibition in Oklahoma City.

The uncontradicted affidavits also establish that ticket sales were discontinued at Cinema's Plaza Theatre; that the usual pattern would be exhibition at approximately 6 to 8 theatres in the surrounding 25-mile area, including 3 in Oklahoma County, which will not exhibit the film because of the threatened action against Cinema's general manager. The proof is that the defendant's actions, if allowed to continue, will cause loss to United of approximately $55,000.00.

We turn from these undisputed facts to the principal legal issues. It is convenient to examine first the new constitutional decisions on obscenity handed down by the Supreme Court in June, 1973.[3]

### (1) The new constitutional requirements for valid obscenity statutes.

 Of course, it has long been recognized that motion pictures are within the free speech and free press guaranty of the First and Fourteenth Amendments. Burstyn, Inc. v. Wilson, 343 U.S. 495, 502, 72 S.Ct. 777, 96 L.Ed. 1098. However, obscenity is not protected by the First Amendment, Roth v. United States, 354 U.S. 476, 485, 77 S. Ct. 1304, 1 L.Ed.2d 1498, and within carefully defined limits, the states may prohibit dissemination of obscenity. In this case we must determine whether the efforts to prohibit exhibition of the film are within those permissible limits.

The Supreme Court on June 21, 1973, decided Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419. A conviction for mailing unsolicited obscene material under the California Penal Code was vacated and the case remanded for further proceedings not inconsistent with new First Amendment standards established by the opinion. In announcing the standards the Court stated, 413 U.S. at 23, 93 S.Ct. at 2614:

"State statutes designed to regulate obscene materials must be carefully limited. . . . *As a result we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the ap-*

3. The principal decision for our purposes is Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (decided June 21, 1973). In June, the Court also decided Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (decided June 21, 1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (decided June 21, 1973); United States v. 12 200-Ft. Reels of Super 8mm. Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (decided June 21, 1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (decided June 21, 1973); Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (decided June 25, 1973); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (decided June 25, 1973); Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed. 2d 993 (decided June 25, 1973).

*plicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which taken as a whole, do not have serious literary, artistic, political, or scientific value."* (emphasis added) (footnote omitted)

\* \* \* \* \* \*

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work taken as a whole, appeals to the prurient interest, . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political,or scientific value . . . If a state law that regulates obscene material is thus limited as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary."

It is against these explicit new standards established by Miller v. California, supra, that we must consider the challenged Oklahoma statutes.

### (2) *The Oklahoma Criminal Obscenity Statutes*

At the consolidated hearing the defendant asserted that two Oklahoma criminal obscenity statutes apply directly, 21 O.S.A. § 1040.8 and § 1040.51. The defendant also says that consideration must be given to the statutory definitions provided in 21 O.S.A. § 1040.12.

### (a) *21 O.S.A. § 1040.8*

Section 1040.8 essentially provides that it is unlawful to exhibit any obscene motion picture film, image, etc. which is obscene, filthy, etc., as defined in 21 O.S.A. § 1040.12, among other things. Section 1040.12, the definitional statute, says that "obscene" means that to the average reader, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.

United argues that § 1040.8 fails to meet any of the *Miller* standards. Through the definitions of § 1040.12, however, the statute seems to comply with the requirement of appeal as a whole to the prurient interest. However, on its face the statute fails to have terms meeting the requirements of portraying in a patently offensive way specifically defined sexual conduct. The section also contains no limitation to matter which, taken as a whole, does not have serious literary, artistic, political, or scientific value.

Thus two of the express requirements appear not to be met by the terms of § 1040.8. However, the *Miller* opinion says, after specifying the several requirements, that First Amendment values are adequately protected "[i]f a state law that regulates obscene material is thus limited, as written or construed. . . ." (emphasis added.) And the opinion earlier refers to state law "as written or authoritatively construed." (emphasis added). 413 U.S. at 24, 93 S.Ct. at 2615.

We have, therefore, examined Oklahoma cases including Cherokee News and Arcade, Inc. v. State, 509 P.2d 917, 921–922 (Okl.Cr.) which construed § 1040.8 and related statutes. In the *Cherkokee News* case the court upheld the statute as valid under the requirements of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 498, and Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1. The statute was sustained although the redeeming social value and national contemporary community standards were "not literally incorporated into the statutes, since the full constitutional standard is to be implied whenever the statutes are applied." 509 P.2d at 922.

It is apparent that under the earlier constitutional standards the Oklahoma Court made a saving construction. However, it is also clear that the *Miller* opinion will require a significant new decision on construction of the State's obscenity laws. At the least, § 1040.8 must be construed to determine whether specifically defined descriptions of sexual acts should be implied into the statute in line with the examples stated in the *Miller* opinion. 413 U.S. at 25, 93 S.Ct. 2607.

■ We discuss below our reasons why we conclude that this significant decision should be left to the State courts. At this point it is apparent, however, that without a new authoritative construction as to the possible implication of the *Miller* limitations into it, § 1040.8 cannot be upheld.

### (b) *21 O.S.A. § 1040.51*

The other criminal obscenity statute relied on by the defendant is § 1040.51. Among other things, this section declares any person guilty of a felony who knowingly buys, traffics in, or causes to be delivered or transported in Oklahoma any moving picture of any person in an act of sexual intercourse or unnatural copulation.

Section 1040.51 on its face seems to comply with that requirement of the *Miller* opinion for limitation to matter depicting or describing sexual conduct, specifically defined by the applicable state law. This much United also concedes.[4] However, on the face of the statute there is no limitation protecting matter having serious literary, artistic, political, or scientific value, and no limitation to matter portraying sexual conduct in a patently offensive way.

Again, a significant decision on construction of the statute would be required before § 1040.51 could be upheld. Cherokee News & Arcade, Inc. v. State,

supra, did not involve § 1040.51 and, as noted, dealt only with earlier constitutional requirements. It must now be decided whether § 1040.51 will be construed so as to imply the critical new limitations which are distinct from those applied before the *Miller* decision.

### (3) *Abstention to permit authoritative state court construction*

On our own motion we have raised the question whether the court should abstain from adjudging the constitutionality of the Oklahoma obscenity statutes until an authoritative state court construction of them under Miller v. California occurs. United opposes abstention and maintains that this court should declare the statutes invalid because they fail to comply with the *Miller* standards as the statutes are presently written and authoritatively construed. The defendant Harris argues that the statutes are valid and that we should so hold. The Attorney General maintains that the statutes as written and construed comply with the *Miller* requirements, relying principally on Cherokee News & Arcade, Inc. v. State, supra.

■ Before any constitutional decision on the obscenity statutes can be made, we feel there must be an authoritative construction of them by the state courts—a function that we cannot undertake. The Supreme Court has clearly recognized that the federal courts ". . . lack jurisdiction authoritatively to construe state legislation." United States v. 37 Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 1405, 28 L.Ed.2d 822; Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222. In the recent obscenity opinions themselves, the Supreme Court observed again that "we must leave to state courts the construction of state legislation. . . ." United States v. 12 200-Ft. Reels, 413 U.S. 123, 130, 93 S.Ct.

---

4. United's brief concedes that § 1040.51 complies with two requirements of the Miller opinion as they are analyzed in the brief; (1) that the statutes be limited to those that describe sexual conduct and (2) that the descriptions of prohibited sexual conduct must be specifically defined by applicable state law (plaintiff's brief, p. 6.).

2665, 2670 n. 7, 37 L.Ed.2d 500. These recent decisions gave us new limitations for constitutional obscenity laws. We therefore cannot agree that older state court decisions can be treated as giving authoritative construction under the new limitations.

We have examined Gordon v. Christenson, 317 F.Supp. 146 (D.Utah) and Cambist Films, Inc. v. Tribell, 293 F. Supp. 407 (E.D.Ky.). In these cases 3-judge federal courts upheld the Utah and Kentucky obscenity statutes under the prior law, saying that the earlier constitutional limitations would be implied into the statutes. However, these opinions do not discuss the problem of whether the federal courts should undertake construction of state statutes, and they came before the Supreme Court's recent decisions reemphasizing that we may not authoritatively do so. We are satisfied that, at least in our circumstances, we should exercise our discretion not to undertake the function of construction of the statutes under the new obscenity decisions.

We realize First Amendment claims are involved in this case and that a problem thus arises as to whether abstention is proper. It has been held that the abstention doctrine is inappropriate where statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities. Dombrowski v. Pfister, 380 U.S. 479, 489–490, 85 S.Ct. 1116, 14 L.Ed.2d 22; see also Cherokee News & Arcade, Inc. v. Field, 311 F.Supp. 1194, 1195 (W.D.Okl.), and other cases there cited.

We are, however, persuaded that discretion may be properly exercised to abstain here under the decisions of the Supreme Court and to await authoritative state court construction of the Oklahoma obscenity statutes. In the very recent obscenity cases themselves, which were fought out under the First Amendment, the Supreme Court did not decide the constitutionality of the state statutes but sent the cases back for authoritative state court constructions. Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419; Paris Adult Theatre v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446; Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492; Heller v. New York, 413 U.S. 483, 93 S. Ct. 2789, 37 L.Ed.2d 745. We are persuaded by the decision to abstain in United Artists Corporation v. Proskin, 363 F.Supp. 406 (N.D.N.Y.) (decided July 31, 1973). There in a case involving this same film, the court abstained to permit a state court interpretation of the New York obscenity laws expected in the near future from the remand of the *Heller* case. But see Hamar Theatres, Inc. v. Cryan, 365 F.Supp. 1312 (D.N.J.) (decided July 26, 1973).

Thus we cannot agree that the claim of First Amendment rights deprives us of discretion to abstain to permit state court construction. And since the recent Supreme Court obscenity opinions point clearly to abstention, we feel we should abstain here and permit the Oklahoma courts to construe the statutes authoritatively. See Lake Carriers Association v. MacMullan, 406 U.S. 498, 510–511, 92 S.Ct. 1749, 32 L.Ed.2d 257; Fornaris v. Ridge Tool Co., et al., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174; United Artists Corporation v. Proskin, supra; Henrie et al., v. Derryberry, 358 F.Supp. 719 (N.D.Okl.); compare Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (decided May 7, 1973).

■ We note that there are procedures where such state court construction may occur. The Oklahoma Declaratory Judgments Act, see 12 O.S.A. §§ 1651 and 1653, provides for determination of the construction or validity of any statute of the State, among other things. See Oklahoma Alcoholic Beverage Control Board v. Central Liquor Co., 421 P.2d 244, 245 (Okl.). We are satisfied that in such a civil proceeding, as well as in possible criminal proceedings, the authoritative construction of the statutes can be obtained. See A.L.I.,

Study of the Division of Jurisdiction Between State and Federal Courts 289 (1969).

### (4) *Interlocutory Relief*

■ The question remains whether any interlocutory relief should be granted by this court while the parties proceed in the state courts to obtain an authoritative construction of the statutes. The plaintiff has a considerable burden in justifying a preliminary injunction. The court must address itself to two relevant factors in weighing the equities: first, the plaintiff's possibility of success on the merits; and second, the possibility that irreparable injury would result, absent interlocutory relief. Brown v. Chote, 411 U.S. 452, 93 S.Ct. 1732, 36 L.Ed.2d 420 (decided May 7, 1973). Also, if the showing of probable success is limited but the plaintiff raises substantial and difficult issues meriting further inquiry, we should consider whether the harm to him outweighs the injury to others if relief is denied. See Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972; Cohen v. Price Commission, 337 F.Supp. 1236, 1239 (S.D.N.Y.), and cases there cited; see also Associated Securities Corporation v. S.E.C., 283 F.2d 773 (10th Cir.).

We realize that paramount values under the First Amendment are involved. Cf. United States v. 37 Photographs, 402 U.S. 363, 367, 91 S.Ct. 1400, 28 L.Ed.2d 822; Blount v. Rizzi, 400 U.S. 410, 419, 91 S.Ct. 423, 27 L.Ed.2d 498; Freedman v. Maryland, 380 U.S. 51, 57, 85 S.Ct. 734, 13 L.Ed.2d 649. And it is true that other exhibitors as well as Cinema are being deterred from exhibiting the film and this will likely continue until an authoritative constitutional decision on the Oklahoma statutes. These circumstances, in addition to the financial loss to United, do favor interlocutory relief.

■ We must, however, consider the probability of the plaintiff prevailing and the public interest as well. Cherokee News & Arcade v. State, supra, is a fairly clear indication of a poli-cy of statutory interpretation that may bring a saving construction. The State decisions do not lend strong support to the claim that the sentences must be invalidated. We also must recognize the public interest in the sense that the Oklahoma Legislature has declared a firm public policy in the criminal obscenity statutes. An injunctive order that would interfere with their enforcement without a clear justification is undesirable. After weighing the equities and these factors we cannot say that a sufficient showing for a preliminary injunction has been made.

### (5) *Alternative relief on the claim that the film is not obscene under any permissible constitutional standard.*

In addition to the constitutional claims asserted by it United asks for a declaration that the film is not obscene, regardless of what constitutionally permissible test of obscenity is applied to it. This claim is similar to an alternate one made by United in United Artists Corporation v. Proskin, 363 F.Supp. 406 (N.D.N.Y.), and on which we are advised that relief was granted.

The majority of the court concludes that we should reach and consider this alternate claim. In view of this determination the entire three-judge panel viewed the film on August 22, 1973, with counsel. However the views expressed on this claim and in Part 5 of this opinion are those of Judge Eubanks and Judge Holloway only. Chief Judge Daugherty's views are expressed in his dissent.

■ The majority concludes that the issue to be decided on the alternate claim is a narrow one. We feel it is whether the film can, as a matter of law, be held not to be obscene under the constitutional standards laid out in Miller v. California. We are convinced and hold that it cannot. Under each of the separate parts of the limitations spelled out in *Miller*, and as to each of them separately, we hold that the film cannot be determined not to be obscene, as a matter of law. Instead we believe the

nature of the film presents a question of fact for the trier of the facts—court or jury—as to whether the film is obscene under standards that are permissible under *Miller*.

Accordingly it is ordered and adjudged that the application for a preliminary injunction is denied; that the court abstains from adjudging the constitutionality of the Oklahoma obscenity statutes in issue, or granting any relief on the ground of their alleged invalidity, to afford opportunity for construction of the statutes by the courts of the State of Oklahoma; that relief is denied on the claim discussed in Part 5 of this opinion; and that jurisdiction for final disposition is retained. See Harrison v. N.A.A.C.P., 360 U.S. 167, 179, 79 S.Ct. 1025, 3 L.Ed.2d 1152; Zwickler v. Koota, 389 U.S. 241, 244 n. 4, 88 S.Ct. 391, 19 L.Ed.2d 444.

This Memorandum Opinion and Judgment will constitute the findings of fact and conclusions of law of the court.

DAUGHERTY, Chief Judge (dissenting).

I dissent, both as to abstaining in the circumstances of this case and in considering an alleged unconstitutional application of Oklahoma Obscenity Laws to Plaintiff's film.

It is not that I do not favor the Federal abstention doctrine in the interpretation of State laws as to their constitutionality. I strongly favor this doctrine. But the United States Supreme Court has clearly announced an exception to this doctrine, which this Court has recently noted and recognized in Cherokee News And Arcade, Inc. v. Field, et al., 311 F.Supp. 1194 (W.D.Okl.1970),[1] when First Amendment rights are involved and there is no State Court action pending in which these rights are being litigated. See Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965);[2] Zwickler v. Koota,[3] 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Plaintiff's action is based on its claim of First Amendment rights and there is no State Court action pending in which these rights are now being litigated. Plaintiff's action falls squarely within the exception which is here applicable in view of Plaintiff's claims. The majority relies upon the obscenity cases recently released by the United States Supreme Court as the basis for their decision to abstain. However, a reading of those cases will reveal that not one of them says the rule announced in *Dombrowski* and *Zwickler* has been reversed or modified or changed in any manner. The majority also cites United Artists Corporation v. Proskin, 363 F.Supp. 406

1. In the opinion in this case authored by Judge Eubanks it was stated:

"We are aware of the decisions of the United States Supreme Court holding that abstention is inappropriate where first amendment rights are involved and where statutes are attacked on their face as abridging free expression or as applied to discourage protected activitites. See Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22; Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444, and Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182."

2. In which the United States Supreme Court said:

" . . . We hold the abstention doctrine is inappropriate for cases such as the present one where, unlike Douglas v. City of Jeannette, [319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324] statutes are justifiably attacked on their face as abridging free ex-

pression, or as applied for the purpose of discouraging protected activities."

3. In which the United States Supreme Court said:

" . . . We squarely held that 'the abstention doctrine is inappropriate for cases such as the present one where . . . statutes are justifiably attacked on their face as abridging free expression . . . .' 380 U.S. at 489–490 [85 S.Ct. 1116, at 1122, 14 L.Ed.2d at 30]. This view was reaffirmed in Keyishian v. Board of Regents, 385 U.S. 589, 601, note 9 [87 S.Ct. 675, 682, 17 L.Ed.2d 629, 639], when a statute was attacked as unconstitutional on its face and we said, citing Dombrowski and Baggett v. Bullitt, supra [377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377], '[t]his is not a case where abstention pending state court interpretation would be appropriate. . . .' "

(N.D.N.Y.—Decided July 31, 1973) as supporting abstention. But that Court cannot change the rule announced in *Dombrowski* and *Zwickler*. In addition, the special circumstances in that case, where an immediate ruling on the construction of New York's Obscenity Laws was expected by the highest court of that State, are not present in our case. Therefore, I would not abstain but would entertain the constitutional question as requested by both parties and declare the Oklahoma Obscenity Laws applicable to Plaintiff to be constitutional under the latest Supreme Court guidelines on the following basis:

The Oklahoma Obscenity Laws are codified in Chapter 39, Title 21 Oklahoma Statutes § 1021 et seq. In 21 Oklahoma Statutes § 1040.12 "obscene" has been defined as:

"'Obscene' means that to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."

21 Oklahoma Statutes § 1040.51 which would pertain to Plaintiff's activities in delivering or transporting in Oklahoma the motion picture involved herein provides:

"§ 1040.51 Pictures, movies, etc. showing acts of sexual intercourse or unnatural copulation prohibited—Exceptions—Penalties

Any person who knowingly buys, sells, barters, traffics in, or causes to be delivered or transported in Oklahoma, any picture, moving picture, series of pictures, drawing, diagram or photograph of any person or animal or caricature thereof in an act or acts or sexual intercourse of unnatural copulation shall be deemed guilty of a felony, and shall be punished by a fine of not to exceed Twenty-five Thousand Dollars ($25,000.00), or by imprisonment for not to exceed fifteen (15) years, or by both such fine and imprisonment. Provided, that nothing contained herein shall prohibit the use

of any of the above mentioned items pursuant to medical prescription by a duly licensed physician in the State of Oklahoma, or in recognized schools of medicine or veterinary science for educational purposes. The provisions of this Act shall not apply to any motion pictures produced or manufactured as commercial motion pictures which (1) have the seal under the Production Code of the Motion Picture Association of America, Inc.; or (2) are legally imported from foreign countries into the United States and have been passed by a Customs Office of the United States Government at any port of entry."

Plaintiff claims that the Oklahoma Obscenity Laws under which it stands threatened with prosecution by Defendant are facially unconstitutional but, if not, would be unconstitutionally applied against it by Defendant as to the motion picture involved. Plaintiff relies on the recent United States Supreme Court decision of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) as announcing the current requirements or guidelines in respect to constitutionality of state obscenity laws. *Miller* provides that obscene material is unprotected by the First Amendment and then states:

". . . State statutes designed to regulate obscene materials must be carefully limited. See Interstate Circuit, Inc. v. Dallas, *supra*, 390 U.S. [676], at 682–685 [88 S.Ct. 1302–1305, 20 L.Ed.2d 225] (1968). As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which taken as a whole, do not have serious literary, artistic, political, or scientific value.

The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, Kois v. Wisconsin, *supra*, 408 U.S. [229], at 230 [92 S.Ct. 2245, 33 L.Ed.2d 312] (1972), quoting Roth v. United States, *supra*, 354 U.S. [476], at 489 [77 S. Ct. 1304, 1 L.Ed.2d 1498] (1957), (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the '*utterly* without redeeming social value' test of Memoirs v. Massachusetts, *supra*, 383 U.S. [413], at 419 [86 S.Ct. 975, 16 L.Ed. 2d 1] (1966).

\* \* \* \* \* \*

". . . If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary. . . .

"We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under the second part (b) of the standard announced in this opinion, *supra*:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

Sex and nudity may not be exploited without limit by films or pictures exhibited or sold in places of public accommodation any more than live sex and nudity can be exhibited or sold without limit in such public places. At a minimum, prurient, patently offensive depiction or description of sexual conduct must have serious literary, artistic, political, or scientific value to merit First Amendment protection."

In its brief filed herein Plaintiff has stated that, "all of the following factors are now indispensable to the constitutionality of the State Obscenity Statutes:

'1. State obscenity statutes must be limited "to works which depict or describe sexual conduct".

2. The descriptions of prohibited sexual conduct "must be specifically defined by the applicable state law".

3. Punishable offenses under state obscenity statutes must be limited to works which . . . .

(a) "taken as a whole appeal to the prurient interest in sex", *and*

(b) "portray sexual conduct in a patently offensive way", *and*

(c) "taken as a whole, do not have serious literary, artistic, political or scientific value".' "

As to a prosecution against it under 21 Oklahoma Statutes § 1040.51, *supra*, Plaintiff admits that factors 1 and 2, *supra*, are met by the Oklahoma Obscenity Laws, that is, the proscription of said statute is limited to sexual conduct and the prohibited sexual conduct is specifically defined (acts of sexual intercourse or unnatural copulation).

But Plaintiff argues that the Oklahoma Obscenity Laws are constitutionally deficient in that factors 3(a), (b) and (c), *supra*, are lacking. We note, however, that factor 3(a), *supra*, is in the Oklahoma Obscenity Laws as shown above in the Oklahoma definition of

obscenity.[4] The Oklahoma Court of Criminal Appeals in Cherokee News and Arcade, Inc. v. State, 509 P.2d 917 (1973) has found 3(c), *supra*, to be implied in the Oklahoma Obscenity Laws whenever the same are applied.[5] Also, it is significant that 21 Oklahoma Statutes § 1021.1 provides that the Oklahoma Obscenity Laws shall not apply to obscene matter used in the course of bona fide scientific education and objects of art or artistic pursuits or like circumstances or justification.

As to factor 3(b), *supra*, that the works portray sexual conduct in a "patently offensive" way, the Plaintiff correctly asserts that the Oklahoma Court of Criminal Appeals has not expressly held that this factorial requirement, as specifically worded in Miller, is read into the Oklahoma Obscenity Laws by implication. That Court has not had the opportunity. But in view of the holding of the Oklahoma Court of Criminal Appeals in *Cherokee News, supra,* it is obvious beyond doubt that the Oklahoma Court of Criminal Appeals would give this requirement the same treatment as it did the "utterly without redeeming social value" standard.[6]

In *Cherokee News* the Oklahoma Court of Criminal Appeals has clearly announced that the full constitutional standard to determine obscenity is to be invoked when the obscenity laws of Oklahoma are applied. Thus, the Oklahoma Court of Criminal Appeals has stated that any prosecution under such statutes shall be accomplished in conformity with full constitutional standards to determine obscenity which would include the *Miller* requirement of "patently offensive".[7] I conclude that the Oklahoma Obscenity Laws have already been construed sufficiently by the Oklahoma Courts to include by implication

---

4. Plaintiff complains that Oklahoma law stops with the words "prurient interest" and does not add the words "in sex". But the United States Supreme Court proceeded identically in *Miller* as shown in the above quote from said case. This complaint is frivolous.

5. When *Cherokee News* was decided the Oklahoma Obscenity Laws did not specifically prescribe the standard announced in Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1, that the work "taken as a whole is utterly without redeeming social value". As stated above the Oklahoma Court of Criminal Appeals has read this standard into the Oklahoma Obscenity Laws by implication. In *Miller, supra,* this standard was discarded for the new and less demanding current standard of "taken as a whole, lacks serious literary, artistic, political or scientific value". It cannot be seriously contended that the Oklahoma Court of Criminal Appeals would not reach the same result with regard to this new and less demanding criteria or standard. Plaintiff relies upon the unreported Federal New Jersey cases of Hammar Theatres, Inc., et al., Plaintiff v. Cryan, et al., Defendants, Civil Action Nos. 472–73, 496–73 and 585–73, D.C. N.J. in which a three-judge Federal Court declared some New Jersey Obscenity Laws to be unconstitutional because they did not specifically contain the standard required in *Memoirs, supra.* But the legislative history in New Jersey shows that the New Jersey Legislature in enacting its obscenity laws specifically considered and discarded the *Memoirs* social test standard as being improper and specifically refused to incorporate the same in its State obscenity legislation. But Oklahoma has no such legislative history and furthermore the Oklahoma Court of Criminal Appeals as shown above has specifically incorporated this standard to be a part of the Oklahoma Obscenity Laws. The Oklahoma Court of Criminal Appeals implied the "social value" test in its consideration of §§ 1040.8 and 1040.13 of the Oklahoma Obscenity Laws and it cannot be seriously contended that they would not do likewise in a consideration of 21 Oklahoma Statutes § 1040.51.

6. At trial herein the Attorney General of Oklahoma (through an assistant) stated that his office in handling appeals or otherwise assisting in obscenity cases would urge Oklahoma Appellate Courts to construe Oklahoma Obscenity Laws as including all the requirements of *Miller.*

7. The court said:
"We therefore hold that the Oklahoma Obscenity Statute here considered is constitutional even though the constitutional standards defining obscenity as requiring the element of redeeming social value . . . are not literally incorporated into the statutes, since the full constitutional standard is to be implied whenever the statutes are applied."

the standard of "patently offensive". This conclusion cannot be seriously controverted in view of the holding of *Cherokee News*.[8] This also conforms with *Miller* which decision in referring to state obscenity laws says, "as written or authoritatively construed" and "as written or construed" and in Note 6, "as construed heretofore or hereafter." It is persuasive to note that the United States Supreme Court in *Miller* alluded to the state obscenity laws of Oregon and Hawaii as examples of constitutionally passable laws. Neither contains the specific language "patently offensive". Nor does each section of either law specifically contain all the requirements of *Miller*.

It is my view that the Oklahoma Court of Criminal Appeals has already held the Oklahoma Obscenity Laws applicable to Plaintiff to be constitutional and to be applied under full constitutional standards as now announced in *Miller*. Cherokee News And Arcade, Inc. v. State, *supra*. No claim is made herein that the threatened prosecution is a bad faith prosecution on the part of the Defendant.

In Cambist Films, Inc. v. Tribell, 293 F.Supp. 407 (E.D.Ky.1968) a three-judge Federal Court in treating with this same matter held:

"The plaintiff contends that KRS 436.101 is unconstitutional in that it defines obscenity in terms more inconclusive than permitted by the standards established by the Supreme Court. KRS 436.101(1)(c) contains the definition:

' "Obscene" means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, a shameful or morbid interest in nudity, sex, or excretion, which goes substantially

beyond customary limits of candor in description or representation of such matters.'

This definition is substantially the same as that found in the A.L.I. Model Penal Code, section 207.10(2) (Tent.Draft No. 6, 1957), which is essentially that adopted by the Court in Roth v. U. S., 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, ftnt. 20.

■ Plaintiff argues that *Roth* has been subject to considerable elaboration since it was decided in 1957, and this is certainly true. But the basic definition of obscenity found in *Roth* has not been changed. Mr. Justice Brennan, in an often quoted passage from A Book Named 'John Cleland's Memoirs of a Woman of Pleasure' v. Attorney General of Commonwealth of Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1, stated that three elements must coalesce before a work can be deemed obscene, '(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.' In listing these three elements, Mr. Justice Brennan was not making *additional* requirements but was merely explaining the *Roth* test. Indeed, the requirement of complete lack of redeeming social value was announced by the Court in Roth, 354 U.S. at 484, 77 S. Ct. 1304.

■ The definition of obscenity in KRS 436.101(1)(c) does not explicitly require that the material be utterly without redeeming social value. This Court is aware of no decisions by Kentucky courts construing this stat-

8. This conclusion is not incompatible with the New Jersey ruling mentioned above as the Court found that the New Jersey State Courts could not find constitutionality in the obscenity laws of New Jersey because of the legislative history, whereas, this is not the situation in Oklahoma.

ute. In view of the fact that this definition was approved in *Roth*, it is inconceivable to this court that the Kentucky Court of Appeals would construe 'obscene' in KRS 436.101 as including material with any social value.

In any event, this court is of the opinion that KRS 436.101(7) can be construed as supplying the requirement of absence of redeeming social value. That subsection states:

'The prohibitions and penalties imposed hereby shall not extend to persons having bona fide scientific, educational, governmental, or other similar justification for conduct which would, except for such justification be criminal under this chapter.' On its face, KRS 436.101 is constitutional."

In Gordon v. Christenson, 317 F.Supp. 146 (D.C.Utah 1970) a three-judge court in our Circuit in considering the constitutionality of the Utah Obscenity Laws held:

"We have no hesitance in rejecting plaintiffs' contention that the subject statutes are inherently unconstitutional. In this regard plaintiffs contend that the Utah obscenity statute is impermissibly vague and overbroad in its definition of the term 'obscene' and therefore unconstitutional on its face. The statutory definition contained in Utah Code Ann. § 76–39–11, with its emphasis on contemporary community standards, prurient interest, and redeeming social importance, is an obvious attempt to adopt the obscenity standard established by the Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. Since the Utah statute does not conform exactly with the present tripartite test as enunciated in A Book Named 'John Cleland's Memoirs of a Woman of Pleasure' v. Attorney General of Com. of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1, the issue is whether a criminal obscenity statute must expressly incorporate all Supreme Court decisions defining obscenity in order to be valid. We hold that it need not. All that is required is that a statute give adequate notice and warning of what conduct is prohibited. The Utah statute accomplishes this since it contains the essential elements for obscenity as reflected in judicial interpretations pertaining to creative art.

Other than giving notice, the inclusion of any definition of the word 'obscene' within the statute is unnecessary. The constitutional definition as enunciated by *Memoirs* and other decisions is automatically and impliedly included within the Utah statute by way of the Supremacy Clause of the United States Constitution and the binding effect of Supreme Court decisions interpreting that Constitution. It is reasonable to assume that the Utah courts will recognize any prosecution under the statute according to the obscenity test enunciated in *Memoirs*. Similar conclusions have been reached in respect to other state statutes. *See, e. g.,* Hosey v. City of Jackson, D.C., 309 F.Supp. 527; Delta Book Distributors, Inc. v. Cronvich, D.C., 304 F.Supp. 662; Great Speckled Bird of Atlanta Coop. News Project v. Stynchcombe, D.C., 298 F.Supp. 1291."

I subscribe to these rulings. These Courts did not abstain. They construed state obscenity statutes as being constitutionally valid.

Moreover, *Miller* provides three basic guidelines, *supra,* for the trier of fact and states that:

". . . In resolving the inevitably sensitive questions of fact and law, we must continue to rely on the jury system, accompanied by the safeguards that judges, rules of evidence, presumption of innocence and other protective features provide, as we do with rape, murder and a host of other offenses against society and its individual members."

The Oklahoma Obscenity Laws applicable to Plaintiff can be presented to a

trier of facts in full compatibility with the *Miller* guidelines. There is nothing in the Oklahoma Obscenity Laws applicable to Plaintiff which negates or runs contrary to any of the *Miller* guidelines.[9]

I would therefore hold that the Oklahoma Obscenity Laws applicable to Plaintiff are constitutional on their face and have been so interpreted by the Oklahoma Court of Criminal Appeals, a declaratory judgment of unconstitutionality should be denied and Defendant should not be enjoined from enforcing the same against the Plaintiff.[10]

I likewise dissent from the majority decision to entertain Plaintiff's request that if the Court should find the Oklahoma Obscenity Laws to be constitutional that it then find that they would be unconstitutionally applied to Plaintiff's film as threatened by Defendant. The majority decision to abstain on the constitutional question and then proceed to consider a claimed unconstitutional application are inconsistent. The rule that a three-judge court will consider an alleged unconstitutional application of a State statute is premised on the foundation that there is a constitutional stat-ute. By abstaining and not finding constitutionality in the Oklahoma Obscenity Laws, the majority does not have the foundation necessary to consider a claimed unconstitutional application of a constitutional statute.

Wright, Federal Courts 2nd Ed. at Sec. 50, page 190 states:

"A three-judge court is to be invoked only where the complaint seeks injunctive relief, and is not necessary if the constitutionality of a statute is drawn in question without any prayer for the restraint of its enforcement. The special court is required only if the injunction is sought on federal constitutional grounds. Like many things about 'this deceptively simple statute,' this limitation abounds with slippery distinctions. Thus three judges are needed if it is claimed that the statute, as applied to plaintiff, is unconstitutional, even though it may be conceded that the statute in general is valid."

In Query v. United States, 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942) it was held that a three-judge court was properly convened to find a constitution-

9. It appears to be Plaintiff's position as demonstrated in its brief and also the position of the majority opinion that each obscenity statute enacted by the Oklahoma Legislature, that each section of codified Chapter 39 which deals with obscenity must contain or recite *all* of the current factors as announced in *Miller*. Such approach runs contrary to well recognized rules of statutory construction. See Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) which provides:

"We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act, and that in fulfilling our responsibility in interpreting legislation, 'we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy.'"

It is felt that the fair and proper approach to the Oklahoma legislation in the field of obscenity is to ascertain if the same as here applied to Plaintiff as a possible offender conforms with the requirements of *Miller* so that the case can be presented within the basic guidelines of *Miller* to the trier of the facts. In other words, do the Oklahoma Obscenity Laws necessarily coming into play against Plaintiff contain standards contrary to *Miller?* I feel that they do not. Any prosecution of Plaintiff by the Defendant would be accomplished under the *Miller* guidelines and any defenses afforded by the guidelines which are available to Defendant can be fully utilized by Defendant before a trier of the facts.

10. In this connection, the Court takes cognizance of the decision of the Oklahoma Court of Criminal Appeals in Potter v. State, 509 P.2d 933 (1973) wherein the last sentence of 21 Oklahoma Statutes § 1040.51 was held to be an unconstitutional delegation of legislative authority and was severable from the remainder of the statute which it then held to be constitutional. This ruling of unconstitutionality as to the last sentence of said section appears to be solidly supported by the decision of this Court in Holding v. Nesbitt, 259 F.Supp. 694 (W.D.Okl.1966), affirmed, United States Supreme Court, Blankenship v. Holding, 387 U.S. 94, 87 S.Ct. 1418, 18 L.Ed.2d 585 (1967) which decision was based on the ruling in Bantam Books v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).

al state licensing statute was inapplicable to a Federal Army Post Exchange and was being unconstitutionally applied by State officials. In Department of Employment v. United States, 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966) it was held that a three-judge court was properly convened to find that a constitutional State taxing statute was inapplicable to the Red Cross as an arm of the Federal Government and was being unconstitutionally applied by State officials. These landmark cases were both premised on a constitutional state statute.

The majority in this First Amendment case and in the face of *Cherokee News, supra,* has declined to find the Oklahoma Obscenity Laws involved as to Plaintiff constitutional. Rather, the majority abstains to allow the State Courts to determine constitutionality which, in my judgment, they have already done *compatible* with Miller. Yet, without finding the existence of constitutional state obscenity laws as to Plaintiff the majority considers a claimed unconstitutional application as to Plaintiff's film. Application of what? There is no Federal obscenity statutory law in this field. There has to be an unconstitutional application or threatened unconstitutional application of a constitutional state obscenity law to Plaintiff's film before this rule or procedure may be invoked. If there is either no law or no constitutional law there is no proscription on Plaintiff's film. The majority apparently would apply the *Miller* limitations and guidelines to Plaintiff's film. But the *Miller* limitations and guidelines are not Oklahoma State Obscenity Laws. *Miller* merely announces limitations on how far a state can legislate in the field of obscenity and how an obscenity case must be tried to the trier of the facts. I am therefore of the opinion that what might be called the "unconstitutional application doctrine" cannot under the law be applied in the absence of an admitted or adjudicated constitutional state law.

Moreover, if this Court is to view Plaintiff's film and determine a possible constitutional application of state obscenity laws to it the result is that this Court becomes a censor. A censor for it and for every other film and every book that someone may desire to bring into this Court. Such procedure would have an improper effect on a state court's determination of obscenity by the trier of the facts based on contemporary community standards as applied by the average person. As long as the *Miller* limitations and guidelines are observed in the passage of state obscenity laws and observed in the trial of state obscenity cases, whether a given work is obscene or not should now be left to the States.